Date signed September 04, 2007



**JAMES F. SCHNEIDER**
**U. S. BANKRUPTCY JUDGE**

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| In re: | * | |
| GLORIA ANN MEGGINSON, | * | Case No. 06-12034-JS |
| Debtor | * | Chapter 7 |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

*MEMORANDUM OPINION DENYING  MOTION OF THE U.S. TRUSTEE*
*TO DISMISS CHAPTER 7 CASE PURSUANT TO 11 U.S.C. § 707(b)(2)*

The United States Trustee filed the instant motion to dismiss for presumed abuse [P. 16] and a supplement [P. 32].  Although the motion was brought pursuant to 11 U.S.C. § 707 (b)(2) and (b)(3), after the debtor filed amended schedules, the movant abandoned his argument pursuant to Section 707(b)(3).  The sole issue remaining is whether the debtor may claim the deduction specified in the Internal Revenue Service ("IRS") Local Transportation Expense Standards for a motor vehicle she owns that is not encumbered by any debt, pursuant to 11 U.S.C. § 707(b)(2)(A)(ii)(I).  For the reasons stated, the Court concludes that the debtor may do so and therefore, the motion to dismiss will be denied.

## FINDINGS OF FACT

1.  On April 10, 2006, the debtor, Gloria Ann Megginson ("Megginson"), filed the instant Chapter 7 bankruptcy case *pro se*.  The Office of the United States Trustee reviewed her schedules, statement of financial affairs and statement of current monthly income and means test calculation, and made a determination that the debtor's case was presumably abusive, pursuant to Section 707(b)(2) of the U.S. Bankruptcy Code.[1]

_____

[1]Section 707(b)(2) provides as follows:

**§ 707. Dismissal of a case or conversion to a case under chapter 11 or 13**

                    *              *              *              *

(b)(2)(A)(i)   In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of–

(I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $6,000, whichever is greater; or

(II) $10,000.

(ii)(I) The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is

2

not otherwise a dependent. Such expenses shall include reasonably necessary health insurance, disability insurance, and health savings account expenses for the debtor, the spouse of the debtor, or the dependents of the debtor. Notwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts. In addition, the debtor's monthly expenses shall include the debtor's reasonably necessary expenses incurred to maintain the safety of the debtor and the family of the debtor from family violence as identified under section 309 of the Family Violence Prevention and Services Act, or other applicable Federal law. The expenses included in the debtor's monthly expenses described in the preceding sentence shall be kept confidential by the court. In addition, if it is demonstrated that it is reasonable and necessary, the debtor's monthly expenses may also include an additional allowance for food and clothing of up to 5 percent of the food and clothing categories as specified by the National Standards issued by the Internal Revenue Service.

(II) In addition, the debtor's monthly expenses may include, if applicable, the continuation of actual expenses paid by the debtor that are reasonable and necessary for care and support of an elderly, chronically ill, or disabled household member or member of the debtor's immediate family (including parents, grandparents, siblings, children, and grandchildren of the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case who is not a dependent) and who is unable to pay for such reasonable and necessary expenses.

(III) In addition, for a debtor eligible for chapter 13, the debtor's monthly expenses may include the actual administrative expenses of administering a chapter 13 plan for the district in which the debtor resides, up to an amount of 10 percent of the projected plan payments, as determined under schedules issued by the Executive Office for United States Trustees.

(IV) In addition, the debtor's monthly expenses may include the actual expenses for each dependent child less than 18 years of age, not to exceed $1,500 per year per child, to attend a private or public

elementary or secondary school if the debtor provides documentation of such expenses and a detailed explanation of why such expenses are reasonable and necessary, and why such expenses are not already accounted for in the National Standards, Local Standards, or Other Necessary Expenses referred to in subclause (I).

(V) In addition, the debtor's monthly expenses may include an allowance for housing and utilities, in excess of the allowance specified by the Local Standards for housing and utilities issued by the Internal Revenue Service, based on the actual expenses for home energy costs if the debtor provides documentation of such actual expenses and demonstrates that such actual expenses are reasonable and necessary.

(iii) The debtor's average monthly payments on account of secured debts shall be calculated as the sum of–

(I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition; and

(II) any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts; divided by 60.

(iv) The debtor's expenses for payment of all priority claims (including priority child support and alimony claims) shall be calculated as the total amount of debts entitled to priority, divided by 60.

(B)(i) In any proceeding brought under this subsection, the presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative.

4

(ii) In order to establish special circumstances, the debtor shall be required to itemize each additional expense or adjustment of income and to provide –

(I) documentation for such expense or adjustment to income; and

(II) a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable.

(iii) The debtor shall attest under oath to the accuracy of any information provided to demonstrate that additional expenses or adjustments to income are required.

(iv) The presumption of abuse may only be rebutted if the additional expenses or adjustments to income referred to in clause (i) cause the product of the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv) of subparagraph (A) when multiplied by 60 to be less than the lesser of–

(I) 25 percent of the debtor's nonpriority unsecured claims, or $6,000, whichever is greater; or

(II) $10,000.

(C) As part of the schedule of current income and expenditures required under section 521, the debtor shall include a statement of the debtor's current monthly income, and the calculations that determine whether a presumption arises under subparagraph (A)(i), that show how each such amount is calculated.

(D) Subparagraphs (A) through (C) shall not apply, and the court may not dismiss or convert a case based on any form of means testing, if the debtor is a disabled veteran (as defined in section 3741(1) of title 38), and the indebtedness occurred primarily during a period during which he or she was–

5

2.  On June 6, 2006, the U. S. Trustee filed a Statement of Presumed Abuse [P. 14], which contained the following statement:

> As required by 11 U.S.C. Sec. 704(b)(1)(A), the United States Trustee has reviewed the materials filed by the debtor(s). Having considered these materials in reference to the criteria set forth in 11 U.S.C. Sec. 707(b)(2)(A), and, pursuant to 11 U.S.C. Sec. 704(b)(2), the United States Trustee has determined that: (1) the debtor's(s') case should be presumed to be an abuse under section 707(b); and (2) the product of the debtor's current monthly income, multiplied by 12, is not less than the requirements specified in section 704(b)(2)(A) or (B).  As required by 11 U.S.C. Sec. 704(b)(2) the United States Trustee shall, not later than 30 days after the date of this Statement's filing, either file a motion to dismiss or convert under section 707(b) or file a statement setting forth the reasons the United States Trustee does not consider such a motion to be appropriate.  Debtor(s) may rebut the presumption of abuse only if special circumstances can be demonstrated as set forth in 11 U.S.C. Sec. 707(b)(2)(B).  Filed by US Trustee – Baltimore 11. (Levin, Katherine)

*Id*.

3.  On July 6, 2006, the U.S. Trustee filed the instant motion to dismiss [P. 16], pursuant to Section 707(b)(2) and (b)(3), and stated the following grounds: (1) because of the obvious inaccuracies contained in the debtor-prepared Chapter 7 Statement of Current Monthly Income and Means Test Calculation, the U.S. Trustee

---

(i) on active duty (as defined in section 101(d)(1) of title 10); or

(ii) performing a homeland defense activity (as defined in section 901(1) of title 32).

11 U.S.C. § 707(b)(2).

prepared its own means test calculation that indicated the debtor's annual income to be $49,800, above the $48,205 state median income for a household of one; (2) the debtor listed her son as a dependent, although he is 37 years old and not disabled; (3) the U.S. Trustee calculated that the debtor has monthly disposable income of $327, which multiplied by 60 equals $19,620, greater than $10,000, at which point 11 U.S.C. § 707(b)(2)(A)(1) contains a presumption of abuse; (4) the totality of the circumstances indicates that the debtor's financial situation demonstrated abuse because her schedules were inaccurate and incomplete, (for example, in her Statement of Financial Affairs she stated that she had no income for the years 2004, 2005 and 2006, while she stated in Schedule I that she has been employed by the Social Security Administration for nine years; in her Statement of Financial Affairs, she stated that she had made no payment to a creditor greater than $600 in the three months prepetition, while in Schedule J, she indicated that she has a monthly mortgage payment of $445; she indicated in Schedule A that she owns no real estate, even though she is the sole owner of real property located at 123 N. Culver Street; she stated in Schedule D that she had no secured creditors, but indicated in Schedule J that she pays a monthly mortgage obligation; on Schedule J she listed a $150 child support obligation, but her only dependent listed on Schedule I is 37 years of age. *Id.*

4.  On August 15, 2006, counsel for the debtor filed her appearance [P. 19]. The following day, the debtor through counsel filed Amended Schedules A, C, D, E, I and J [P. 21], an Amended Statement of Financial Affairs [P. 23], an Amended Statement of Intent [P. 24], an Amended Chapter 7 Statement of Current Monthly Income and Means Test Calculation [P. 25], and an Opposition [P. 22] to the motion to dismiss. The various amendments prompted the U.S. Trustee to abandon Section 707(b)(3) as the basis for the motion, but it continued to press the motion based upon Section 707(b)(2).[2]

5.  On September 22, 2006, the U.S. Trustee filed a Supplement to the motion to dismiss [P. 32], in which it contended that the case continues to represent an abuse because (1) the debtor claimed a $471 deduction for an ownership/lease expense on line 23 of her means test calculation; (2) she is not entitled to claim such a deduction because her schedules reflect that she is neither leasing a vehicle nor making a car payment;[3] (3) the deduction is only allowed for debtors who are making car payments or lease payments on an automobile; (4) because the listed vehicle is more than six

_____

[2]A hearing on the motion was originally scheduled for August 21, 2006, but documents produced by the debtor shortly before that date caused the U.S. Trustee to request that the hearing be postponed in order that the documents might be considered.

[3]On Schedule B, the debtor listed an automobile described as a "1997 Cougar," but did not list a secured creditor on Schedule D or a car payment on Schedule J.  *Id*.

8

years old, the debtor is entitled to a $200 per month deduction; (5) even with the $200 deduction, the case remains presumptively abusive because the debtor has 60-month disposable income of $17,795, as indicated by the comparative means test analysis prepared by the U.S. Trustee as an attachment to the Supplement.

6.  On October 2, 2006, counsel for the debtor filed a response [P. 34] to the Supplement, in which she contended that the debtor is entitled to deduct the $471 she listed on line 23 of her Amended Form B 22A, according to the plain language of Section 707(b)(2)(A)(ii)(I).

7. Finally, counsel for the debtor argued that the "debtor has minimal disposable income," because she has certain special circumstances, including health problems and an old car that requires extensive repairs and ultimately a replacement vehicle, she is not a viable candidate for Chapter 13.  At the hearing, counsel requested further time to present documentation regarding the state of the debtor's health and the required motor vehicle repairs.  The Court permitted the debtor to file such documentation after the hearing.

8.  The health documentation submitted indicated that the debtor suffers from diabetes, carpal tunnel syndrome and a deteriorating ulnar joint.  There is no indication of permanent, total or partial disability.

9

9.  With respect to her automobile, the debtor presented two repair estimates, one in the amount of $3,600, the other for $1,494.

10.  The Court concludes from the debtor's schedules and post-trial submissions that she is a single debtor with no dependents and therefore constitutes a household of one; that she owns one unencumbered motor vehicle, a 1997 automobile; that she is employed and receives an annual income of $52,332; and that she has some health problems that cause her discomfort, limit her physical activity and require medical attention and treatment.

## CONCLUSIONS OF LAW

1.   This is a core proceeding over which this Court has subject matter jurisdiction to render a final decision.  28 U.S.C. §§ 157(b) and 1334.

2.  The instant case is subject to the requirements of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, (Pub. L. 109-8, 119 Stat. 23, enacted April 20, 2005),  known as "BAPCPA," which became effective on October 17, 2005.

3.  BAPCPA contains provisions that require individual debtors who file a bankruptcy petition to perform a means test[4] in order to qualify for relief under Chapter 7.  The purpose of the means test is to determine that consumer debtors are

---

[4]The means test is set forth in Section 707(b)(2)(A)(i), quoted in footnote one.

actually in need of Chapter 7 relief and cannot afford to pay creditors in a Chapter 13, thereby preventing abuse of the bankruptcy system.

4.   The Code defines "consumer debt" as "debt incurred by an individual primarily for a personal, family, or household purpose."  11 U.S.C. § 101(8).

5.   Ms. Megginson is a consumer debtor.  A review of her schedules indicates that all of the debts she owes are consumer debts.[5]

6.   The first step in the means test requires the debtor to compute her current monthly income[6] calculated according to the number of members of her household,

---

[5]Amended Schedule D (Creditors Holding Secured Claims) indicates a first mortgage and another encumbrance on the debtor's residence totaling $70,900, leaving a thin equity cushion in the amount of $2,100, which the debtor claimed as exempt in Amended Schedule C.   Schedule F (Creditors Holding Unsecured Nonpriority Claims) lists consumer debts in the total amount of $25,190.38.  *Id*.

[6]Current monthly income is defined by the Code as "the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period ending on the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii); or (ii) the date on which current income is determined by the court for purposes of this title if the debtor does not file the schedule of current income required by section 521(a)(1)(B)(ii); and includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent), but excludes benefits received under the Social Security Act, payments to victims of war crimes or crimes against humanity on account of their status as victims of such crimes, and payments to victims of international terrorism (as defined in section 2331 of title 18) or domestic terrorism (as defined in section 2331

11

multiply that number by 12 to obtain her annual income, and then compare that number to the annual median income of the state in which the debtor resides. Assuming that the debtor's annual income as computed is less than or equal to the annual median income of the resident state, no presumption of abuse arises and the debtor qualifies for Chapter 7 relief, without further calculation.

7.  According to the debtor's calculations, her current monthly income without exclusions was $4,361.  This figure is not in dispute.  When that figure is multiplied by 12, the resulting number of $52,332 is obtained.  When the instant case was filed, the median income for a Maryland household of one was $48,205.  Because the debtor's annualized income for a household of one is higher than the median income for "1 earner," the debtor must complete the remainder of Form B 22A in order to rebut the presumption of abuse and qualify for Chapter 7.  11 U.S.C. § 707(b)(7).

8.  After all deductions and exclusions, the debtor indicated on her Amended Form B 22A that she has monthly disposable income of $45.88, which multiplied by 60 months equals 60-month disposable income of $2,752.80.

9.  Where the 60-month disposable income of a Chapter 7 debtor is greater than $10,000, the Code provides that a presumption of abuse arises.  Because the debtor

---

of title 18) on account of their status as victims of such terrorism."  11 U.S.C. § 101(10A).

has indicated 60-month disposable income of only $2,752.80, the presumption of abuse is not apparent in the instant case.

10.  The U.S. Trustee argued that the instant case is abusive because the debtor was not entitled to deduct the full amount of $471 allowed by the IRS Local Standards for a motor vehicle she owns because it is not encumbered and she has no obligation to make car payments to retain the vehicle.  The U.S. Trustee reads the IRS Local Standards to allow the debtor to take a deduction of only $200 as the owner of an unencumbered vehicle.

11.  Section 5.15.1.74B of the IRS Manual (the "Manual") provides that a debtor may deduct from her disposable income an allowance for transportation expenses.  In the case of *In re Fowler*, 349 B.R. 414 (Bankr. D. Del. 2006), Chief Judge Walrath held that the plain language of Section 707(b)(2)(A)(ii)(1) entitled a debtor to claim the full amount of the deduction, even if the vehicle was not subject to a security interest that required the debtor to make car payments.[7]  *Accord*,  *In re Chamberlain*, 369 B.R. 519 (Bankr. D. Ariz. 2007); *In re Wilson*, 356 B.R. 114 (Bankr. D. Del. 2006); *In re Hartwick*, 352 B.R. 867 (Bankr. D. Minn. 2006); *In re*

---

[7]In the context of a Chapter 13 case, Chief Judge Keir of this Court held in *In re Watson*, 366 B.R. 523 (Bankr. D.Md. 2007), that a debtor's projected disposable income may be reduced by the local ownership allowance afforded under the Manual when the vehicle was unencumbered, thereby endorsing the position taken on the issue by *In re Fowler*, *supra*.

*Ragle*, 2007 WL 1119632 (Bankr. E.D. Ky. 2007); *In re Enright*, 2007 WL 748432 (Bankr. M.D. N.C. 2007); *In re Zak*, 361 B.R. 481 (Bankr. N.D. Ohio 2007).

12.  In opposition, the U.S. Trustee cited the cases of *In re Hardacre*, 338 B.R. 718 (Bankr. N.D. Tex. 2006); *In re Oliver*, 350 B.R. 294 (Bankr. W.D. Tex. 2006); *In re Wiggs*, 2006 WL 2246432 (Bankr. N.D. Ill. 2006); *In re McGuire*, 342 B.R. 608 (Bankr. W.D. Mo. 2006); *In re Demonica*, 345 B.R. 895 (Bankr. N.D. Ill. 2006), and *In re Harris*, 353 B.R. 304 (Bankr. E.D. Okla. 2006), all of which hold that debtors may not claim the automobile deduction in the absence of having to make a car payment to a secured creditor or an automobile lease payment.

13.  This Court agrees with the cases that hold that debtors are entitled to claim the full amount of the transportation exclusion regardless of whether or not they are obligated to make car payments.  The Court finds persuasive the following analysis of the question by Judge Thomas W. Waldrep, Jr., in *In re Enright*, *supra*:

> The issue before the Court concerns Section 707(b)(2)(A)(ii)(I), which provides, in part:
>
> > The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief[.]

14

11 U.S.C. § 707(b)(2)(A)(ii)(I).

The National Standards and Local Standards are "the Collection of Financial Standards used by the Internal Revenue Service (the 'IRS') to determine a taxpayer's ability to pay a delinquent tax liability." *In re Fowler*, 349 B.R. 414, 416 (Bankr. D. Del. 2006). The National Standards set forth amounts for five categories of expenses: (1) food, (2) housekeeping supplies, (3) apparel and services, (4) personal care products and services, and (5) miscellaneous. Internal Revenue Manual, § 5.15.1.8 (May 1, 2004). The Local Standards set forth amounts for housing and transportation expenses. *Id*. at § 5.15.1.9. The transportation expenses are divided into two categories, operating allowance and ownership allowance for up to two vehicles. *Id*. at § 5.15.1.7.

In this case, the Debtor took the ownership allowance for a vehicle that is owned free of any liens or leases. The Trustee asserts that to claim the ownership allowance, the Debtor must be making a loan or lease payment on the vehicle. The Debtor asserts that the plain language of Section 707(b)(2)(A)(ii)(I) provides that she can take the ownership allowance if she owns a vehicle, irrespective of whether or not the vehicle is owned free of any liens. A number of courts have considered this issue, and there is a split of authority. On one side are the courts that deny the use of the ownership allowance where the debtor owns a vehicle free and clear of liens. *See In re Slusher*, No. BK-S-06-10435-BAM, 2007 WL 118009, at * 14 (Bankr. D. Nev. Jan.17, 2007); *In re Devilliers*, No. 06-10415, 2007 WL 92504, at *14 (Bankr. E.D. La. Jan. 9, 2007); *In re Harris*, 353 B.R. 304, 309-10 (Bankr. E.D. Okla.2006); *In re Oliver*, 350 B.R. 294, 301 (Bankr. W.D. Tex. 2006); *In re Carlin*, 348 B.R. 795, 797 (Bankr. D. Or. 2006); *In re Wiggs*, No. 06-B-70203, 2006 WL 2246432, at *3 (Bankr. N.D. Ill. Aug. 4, 2006); *In re Lara*, 347 B.R. 198, 201 (Bankr. N.D. Tex. 2006); *In re Barraza*, 346 B.R. 724, 727-29 (Bankr. N.D. Tex. 2006); *In re McGuire*, 342 B.R. 608, 613 (Bankr. W.D. Mo. 2006); *In re Hardacre*, 338 B.R. 718, 728 (Bankr. N.D. Tex. 2006). On the other side are the courts that permit a debtor who owns a vehicle free of liens to take the ownership allowance. *See In re Sorrell*, --- B.R. ----, 2007 WL 211276, at * 17

15

(Bankr. S.D. Ohio Jan. 26, 2007); *In re Zak*, --- B.R. ----, 2007 WL 143065 at *7 (Bankr. M.D. Ohio Jan. 12, 2007); *In re Crews*, No. 06-10422C-13G, 2006 WL 3782865, at *1 (Bankr. M.D. N.C. Dec. 22.2006); *In re Wilson*, 356 B.R. 114, 119 (Bankr. D. Del. 2006); *In re Haley*, 354 B.R. 340, 344 (Bankr. D. N.H. 2006); *In re Prince*, No. 06-10328C-7G, 2006 WL 3501281, at *4 (Bankr. M.D. N.C. Nov.30, 2006); *In re Grunert*, 353 B.R. 591, 594 (Bankr. E.D. Wis. 2006); *In re Hartwick*, 352 B.R. 867, 868-69 (Bankr. D. Minn. 2006); *In re Fowler*, 349 B.R. at 419; *In re Demonica*, 345 B.R. 895, 905 (Bankr. N.D. Ill. 2006); *see also In re Farrar-Johnson*, 353 B.R. 224, 230-31 (Bankr. N.D. Ill. 2006)(using the same reasoning that would apply to the ownership allowance, the court held that a debtor may take the housing allowance under the Local Standards even if the debtor does not incur a rent or mortgage expense).

A. Cases Denying the Ownership Allowance for Vehicles Owned Free of Liens

1. Internal Revenue Publications

In the landmark decision on this issue, Judge Nelms looked to the Internal Revenue Manual (the "IRM") and the Collection Financial Standards to aid in the interpretation of Section 707(b)(2)(A)(ii)(I). *In re Hardacre*, 338 B.R. at 726. The court reasoned that "[b]ecause the Local Standards are issued by the Internal Revenue Service, it is instructive to refer to publications of that organization for guidance as to the types of 'debt payments' that can reduce allowances under the Local Standards." *Id*. at 726. With respect to the Local Standard amounts, the Collection Financial Standards state that "[t]he ownership costs provide maximum allowances for the lease or purchase of up to two automobiles if allowed as a necessary expense." *Id*. at 728 (quoting Collection Financial Standards, www.irs.gov/individuals/article/0,,id=96543, 00.html). The court then held that "[b]ecause the Local Standards only provide for a deduction for automobiles that are subject to lease or purchase, they do not permit a debtor to claim an ownership deduction for a vehicle owned free and clear by the debtor." *Id*. at 728.

Other courts agreed with the reasoning in *Hardacre* and also used IRS publications for guidance. *See In re Oliver*, 350 B.R. at 301; *In re Carlin*, 348 B.R. at 798; *In re McGuire*, 342 B.R. at 612. In *McGuire*, the court relied on the IRM, which provides that " 'if a taxpayer has a car payment, the allowable ownership cost added to the allowable operating cost equals the allowable transportation expense,' but 'if a taxpayer has no car payment, only the operating cost portion of the transportation standard is used to figure the allowable transportation expense.'" *Id*. at 613. (quoting IRM, Financial Analysis Handbook § 5.15.1.7(4)(b)). Based on the IRM language and *Hardacre*, the court held that the debtors could not take the ownership allowance because their vehicle was owned free of liens. *Id*. at 613-14.

## 2. Plain Language

In addition to using the IRS publications for guidance, courts have interpreted the plain language of the statute as prohibiting the use of the ownership allowance when the debtor owns a vehicle free of liens. In *Wiggs*, the court found it unnecessary to look to the IRM for guidance, and instead looked at the language of Section 707(b)(2)(A)(ii)(I). *In re Wiggs*, 2006 WL 2246432 at *2. The court determined that "the language of the statute is clear and unambiguous." *Id*. It found that "the term 'applicable' modifies the amounts specified to limit the expenses to only those that apply." *Id*. The court went on to point out that by interpreting the statute as allowing every debtor to claim the full ownership amount would make the term "applicable" "superfluous." *Id*. Therefore, the court held that the debtor was not allowed to take the ownership allowance when the debtor did not have a vehicle payment. *Id*. at 3. Other courts profess to base their opinions on the plain language of the statute, but they do so by looking to the IRS publications for guidance. *See In re Harris*, 2006 WL 293389, at *3; *In re Carlin*, 348 B.R. at 797-98; *In re McGuire*, 342 B.R. at 613.

## B. Cases Allowing the Ownership Allowance When the Vehicle is Free of Liens

17

Other courts have rejected the use of IRS publications for guidance. Instead, they have based their opinions largely on the plain language of the statute and the relevant legislative history.

## 1. Plain Language

In *Farrar-Johnson*, the court considered the plain language of the statute, specifically looking at the use of the term "applicable." *In re Farrar-Johnson*, 353 B.R. at 230-31. The court found that the term read in isolation was ambiguous and means simply "can be applied; appropriate." *Id.* at 230. However, the court noted that statutory terms should never be read in isolation, but instead must be "read in the context in which they appear." *Id.* When the court looked at "applicable" within the context of Section 707(b)(2)(A)(ii)(I), it found that "Congress drew a distinction in the statute between 'applicable' expenses on the one hand and 'actual' expenses on the other." *Id.* Therefore, expenses under the Local Standards only need to be applicable to the debtor, "because of where he lives and how large his household is. It makes no difference whether he 'actually' has them." *Id.* at 231. The court in *Hartwick* echoed this plain language interpretation in its determination that a straightforward reading of the statute provides that the debtor's ownership allowance is the higher of the debtor's actual expenses or the Standard amounts. *In re Hartwick*, 352 B.R. at 869. The court found that the reading does not change when the debtor's actual vehicle payment is zero. *Id.* Other courts have also found that the plain language of the statute is unambiguous and reached the same result. *In re Wilson*, 356 B.R. at 119-21; *In re Prince*, 2006 WL 3501281, at *2; *In re Grunert*, 353 B.R. at 594; *In re Fowler*, 349 B.R. at 419.

## 2. Legislative History

Although the *Fowler* court based its holding on the plain language of Section 707(b)(2)(A)(ii)(I), it also found support for its decision in the legislative history. *In re Fowler*, 349 B.R. at 419. The court noted that in a prior version of BAPCPA that was never passed Congress defined "projected monthly net income" to require the following calculation of expenses:

18

> (A) the expense allowances under the applicable National
> Standards, Local Standards, and Other Necessary Expenses
> allowance (excluding payments for debts) for the debtor ...
> in the area in which the debtor resides as determined under
> the Internal Revenue Service financial analysis for
> expenses in effect as of the date of the order for relief.

*Id*. at 419 (quoting H.R. 3150, 105th Congress (1998)). The language referring to the IRS financial analysis was changed to the current language of Section 707(b)(2)(A)(ii)(I), which simply provides that the debtor can take the "applicable monthly expense amounts specified under the National and Local Standards." *Id*. at 419. The court concluded that this change from the prior version requiring the use of the IRS financial analysis to the current version merely referring to the monthly expense amounts "evidences Congress' intent that the Courts not be bound by the financial analysis contained in the IRM and lends credence to the Court's conclusions that it should look only to the amounts set forth in the Local Standards." *Id*.

3. Why Using the IRM Is Inappropriate

In addition to the plain language of the statute and the legislative history, several courts have addressed why the use of the IRM is inappropriate to interpret the means test. The National Standards and Local Standards provide amounts that are used by the IRS to determine a taxpayer's ability to pay delinquent taxes. *In re Fowler*, 349 B.R. at 416. These amounts are caps, to which taxpayers are allowed the lesser of the Standard amount or the actual expense. *In re Prince*, 2006 WL 3501281, at *3; *In re Hartwick*, 352 B.R. at 869; *In re Fowler*, 349 B.R. at 417. However, in bankruptcy the debtor is allowed the amount specified in the Local Standards for that category or the amount that the debtor actually incurred, whichever is higher. *In re Prince*, 2006 WL 3501281, at *3; *In re Hartwick*, 352 B.R. at 869; *In re Fowler*, 349 B.R. at 417. In his article, Judge Wedoff also looked at the inappropriate use of the IRM in determining the ownership expense amount. He stated that since the IRM treats the Local Standards as caps, it follows logically that,

if a taxpayer has no car payments, the taxpayer obviously cannot claim a Local Standard amount intended to cap actual car payment expenses. However, since the means test treats the Local Standards not as caps but as fixed allowances, it is more reasonable to permit a debtor to claim the Local Standards ownership expense based on the number of vehicles the debtor owns or leases, rather than on the number for which the debtor makes payments.

Eugene R. Wedoff, *Means Testing in the New World*, 79 Am.Bankr. L.J. 231, 256-67 (Spring 2006). Therefore, it makes little sense to look to the analysis provided in the IRM, because that publication uses the Standard amounts for a completely different purpose than the purpose for which Congress intended them to be used under BAPCPA.

C. The Case Before the Court

   While there are strong arguments on both sides of this issue, this Court holds that allowing the Debtor to take the ownership allowance on her vehicle, which is owned free of liens, is the correct interpretation. In reaching this conclusion, the Court rests its holding on the plain language of Section 707(b)(2)(A)(ii)(I) of the Bankruptcy Code.

   In discerning congressional intent, courts must start by looking to the plain language of the statute. *Lamie v. United States Tr.*, 540 U.S. 526, 533, 124 S. Ct. 1023, 157 L. Ed.2d 1024 (2004). "Courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut National Bank v. Germain*, 503 U.S. 249, 253-54, 112 S. Ct. 1146, 117 L. Ed.2d 391 (1992). Therefore, if the terms of the statute are unambiguous, the "judicial inquiry is complete," and the court's job is simply to enforce those terms. *Id*.

   Section 707(b)(2)(A)(ii)(I) provides that "[t]he debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards[.]" 11 U.S.C. § 707(b)(2)(A)(ii)(I). If the Court was to look at the term "applicable" in isolation, it would concede that the statute could be

viewed as ambiguous.  However, the Court must look at the statute as a whole and not merely as individual isolated phrases.  *United States v. Morton*, 467 U.S. 822, 828, 104 S. Ct. 2769, 81 L. Ed.2d 680 (1984).  Therefore, the Court must consider the next phrase in that section where the term "actual" refers to "Other Necessary Expenses."  11 U.S.C. § 707(b)(2)(A)(ii)(I).  Since the terms "applicable" and "actual" are used in the same sentence with each modifying a different type of expense, it would make little sense to interpret them as meaning the same thing.  Instead, a more logical explanation is that Congress used two different terms to achieve two different results.  *See In re Farrar-Johnson*, 353 B.R. at 230-31; *In re Fowler*, 349 B.R. at 418.

If the two terms do not mean the same thing, and "actual" means the expenses the debtor incurred, then "applicable" must refer to something different.  One definition of "applicable" is, "applying or capable of being applied; relevant; appropriate."  The Random House College Dictionary 65 (rev. ed.1980).  This definition makes sense in the context of Section 707(b)(2)(A)(ii)(I), because except for the ownership allowance, the other amounts listed in the National Standards and Local Standards are contingent on where the debtor lives.  U.S. Trustee Program, Means Testing, available at http://www.usdoj.gov/ust/eo/bapcpa/20061001/ meanstesting.htm (last visited Feb. 1, 2007).  By referring to the "applicable monthly expense amounts under the National Standards and Local Standards," Congress was directing debtors to the amounts specific to the area in which they live.  Congress used "applicable" to refer to geographical area of the debtor and "actual" to refer to "Other Necessary Expenses" that the debtor in fact incurred.  This interpretation of "applicable" is consistent with the plain language of the statute.  Therefore, a plain reading of "applicable monthly expense amounts" in Section 707(b)(2)(A)(ii)(I) refers to the expense amounts under the National Standards and Local Standards for the geographical area in which the debtor lives.

This same analysis was used in *Demonica*, *Fowler*, *Farrar-Johnson*, and *Haley*, and by other courts, to reach the same conclusion.  Additionally, Judge Wedoff addressed the issue of allowances in his article and found that:

a plain reading of the statute would allow a deduction of the amounts listed in the Local Standards even where the debtor''s actual expenses are less. Thus, as with the allowances of the National Standards, even if the debtor's transportation and housing needs were actually satisfied without cost to the debtor, 707(b)(2)(A)(ii)(I) would allow the debtor a deduction in the amounts specified in the IRM's Local Standards.

Eugene R. Wedoff, *Means Testing in the New World*, 79 Am. Bankr.L.J. 231, 255 (Spring 2006) (footnotes omitted).

Although the Court finds that the plain language of the statute is clear, even if it was ambiguous, the result would not change. Where a statute is ambiguous, a court may look to the legislative history for guidance in order to determine Congress' intent. *United States v. Irvin*, 2 F.3d 72, 76 (4th Cir.1993), *cert. denied*, 510 U.S. 1125, 114 S. Ct. 1086, 127 L. Ed.2d 401 (1994).

*In re Enright*, 2007 WL 784432, at * 2-6.

For these reasons, the motion of the U.S. Trustee to dismiss the instant case for abuse will be DENIED.

***ORDER ACCORDINGLY.***

22

cc:    Office of the United States Trustee
       2625 U.S. Courthouse
       101 West Lombard Street
       Baltimore, Maryland  21201

       Ms. Gloria Ann Megginson
       P.O. Box 11531
       Baltimore, Maryland  21229

       S. D. Raysor-Taylor, Esquire
       Law Office of Raysor-Taylor
       One East Lexington St., Ste. 501
       Baltimore, Maryland  21202

       Marc H. Baer, Esquire
       3545 Chestnut Avenue+
       Baltimore, Maryland  21211
       Chapter 7 Trustee